The first case today is number 24-1889, United States v. Robert Daigle. At this time, would counsel for the appellant please come to the podium and introduce herself on the record to begin. Good morning. May it please the court, Sandra Birumala representing the appellant Robert Daigle. I would like to reserve two minutes for rebuttal. You may. Thank you. The search warrant in this case was applied for eight months after a user on Freenet, which is a privacy-based platform that is not devoted to child pornography, made three requests for files within a ten-minute span. Now the files were known to law enforcement to contain child pornography, but the affidavit did not establish that the user knew that the files he was requesting were child pornography. And there's key information that's missing from this affidavit. For example, keys are required to initiate a request for a file. The affidavit did not state that any files were actually downloaded. The affidavit did not state how the user found the key to initiate the file request. The affidavit did not state that the key, which is comprised of like random characters, that the key itself contained child porn-coded language like Lolita or any acronym that would indicate that the key would lead to child pornography. And due to the many deficiencies in the affidavit, there was no probable cause, and the warrant should not have been issued. Counsel, you say that the affidavit didn't make clear that your client knew that the files were child pornography, and that's certainly true. But I thought the key issue really here is that since it was at least an attempt to download three files that law enforcement knew were, in fact, pornography files, that it was a fair inference that when a person is trying to download three separate files, each of which are known pornography files, that in that situation a magistrate judge could conclude that the person, that there's enough information to conclude that it's not an accident because it's three separate files, it's not just one. So can you address why that wouldn't be a fair inference? The case would be very different perhaps if it were just one file, but it's three here. I think it's important to note what information we know was available or accessible from the user's standpoint. Law enforcement did know that the files led to child pornography, but the affidavit did not state that the user found the key on a website or a free site or a message board that made it clear that this key would lead to child pornography. And historically, this court has determined that probable cause is established when there's adequate information showing that the suspect knew they were accessing child pornography. For example, in Wilder, the defendant there tried to access a website that was entitled Lust Gallery, a secret Lolita's archive, and a preview page. Just on Judge Rickleman's question, I mean, if we just took it further, let's say it was 20 different attempts, all with the same facts, no information about the key, every time the thing that's being accessed happens to be child pornography, do you have the same position or different? Well, it's a totality of circumstances analysis, certainly. And in your hypothetical, it would depend how far apart were the... Same amount of time gap is between these three. Oh, the same 10 minutes. I think it's important to note that between each click... Well, just take my hypothesis. Suppose it's 20 different times with the same gap. Would you then say still no fair inference? Well, based on these facts, possibly no. Possibly no, but possibly yes? We're going to go with possibly no. It's important to note that when a key was... Excuse me. When a file request was initiated, and there was three in this case, it wasn't that a download actually completed before the next file request was initiated. So there's no evidence that the user knew before they made the request for the second file or the third file that any of the files actually would lead to child pornography. Counsel, we're told in doing this probable cause analysis that we're supposed to use common sense. Are you suggesting that it would be consistent with common sense that these... It was simply coincidence that these attempts all involved a site with child pornography? Is that the counter inference that you're suggesting as opposed to intentional conduct? Just a coincidence? And the district court used that language, a coincidence, and the affidavit doesn't make clear that there was only three attempts to retrieve files. We don't know if the user was attempting to retrieve other files within that span of time. Also, I think it's important to note that in Raymunda, there was actually viewing of child pornography, and the court has to make a distinction between inadvertent or negligent encounters with child pornography, which is not enough for probable cause, and intentional searches for child pornography. And in this case, based on the information we have in this affidavit, we can't establish that it was an intentional search. We don't know where the key was located. Other affidavits, typically where probable cause has been found, will show that the link or hyperlink was located in a place that had all of the earmarks of child pornography. There's other things the affidavit might include, which is a suspect's history. Maybe they have a prior history or criminal history of possession or distribution of child pornography. Maybe a user sent out child pornography in an undercover operation. But any time this court has actually agreed that there was probable cause in a case, there has been some link to show that the user intentionally was looking for that child pornography, and we really don't have that in this case. Counsel, I'd like to ask you about the staleness issue, which I frankly think is the most problematic issue for the government. There was about an eight-month lag between the time of these attempts and the execution of the warrant. Is that correct? Seven or eight months? Yes, eight months. And the government seems to deal with that by arguing about the behavioral characteristics of individuals who collect child pornography. Once they find it, they keep it, they keep it, they keep it. And so it would be a reasonable inference that these images would still be in the possession of whoever is at the location. I gather your argument is there is nothing in the affidavit which reflects any knowledge of an individual who might fit those characteristics of someone who collects child pornography other than the evidence of these attempts in rapid succession. Is that your argument? You said it's fine to characterize individuals who are like that, but there's nothing in the affidavit that would place this individual in such a category. Is that essentially your argument? That is accurate. I think that the law enforcement in this case tried to fill in the gaps in the affidavit rather than including information that was particularized to this particular user as to why they were a collector or consumer of child pornography. Can I finish this question?  They just include a boilerplate information that is applicable to all child pornography consumers and that is what allows the government to overcome the hurdle of staleness and we don't have that here because there's no evidence that this person was a typical consumer. We don't have the history. We don't have evidence that he downloaded any images or videos and the most the government can establish is that any encounter was purely negligent or inadvertent. An encounter here is limited because there's no downloads. Thank you. Thank you counsel. At this time would counsel for the government please introduce himself on the record to begin. Your honors, may I please escort Randall Crum on behalf of the government? Randall, do you mind lifting your microphone? Thank you. There you go. So on the first question of probable cause, I want to point out some features of Freenet that I think make the inference that your honor was drawing with respect to the number of downloads particularly powerful in this context. That is I think made clear in the affidavit and in the briefing. Freenet doesn't have a search function. It's not like the ordinary internet where one can have the experience which we've all had where you put in a search term and you get stuff that you really weren't intending or you click on a link somewhere and it just leads you somewhere else. Freenet doesn't allow you to search for things and so the only way you can find files, and the purpose of a file sharing is to exchange files with people who want them, is to go to a place where those files can be found and as the affidavit points out, child pornography is generally put in particular places where it's gathered together in lists or on free sites where a person can find them. There's no indication in the affidavit that it's put anywhere else or that it's regularly interspersed with other files and there's good reason to believe it wouldn't be. The court in Bosak pointed out that this is kind of a material that one wouldn't expect to be just sort of freely distributed. So one has to go through an affirmative step of going somewhere where it will be located. And is the implication though that in theory you could get a key that somebody knew would take you to X place that turned out to be child pornography but you as the holder of the key wouldn't know that's where it was going to take you? That's possible, correct? It is possible, but I think the keys, there's no indication and I don't believe it's the way that Freenet works that a link would redirect you to another link or to another place. That is the only information we have and my understanding from the previous briefing is that... No, no, I think the logic if I'm following it is that there's a key that takes you intentionally to this place which is child pornography. Right. But there's nothing about the key itself that would tell you that. No. And so it's... I agree with that. It's a lot... The thought is, I mean I'm just throwing it out, but I guess one scenario is I don't like this person. I give them three keys. You go do this. They do that. Each time it's child pornography. And I wouldn't have any idea just from the key that I got, all I know is my friend said use this key. That's the... That is theoretically possible. But again, the government doesn't have to rule out innocent possibilities. And I think, you know, the Bosick case is sort of indicative on this point. They found that the link that the person went to was a link that was on a website that posted child pornography. The court acknowledged that it's possible this defendant, that defendant got the link somewhere else, that it was sent to them, that they just found it randomly. But the inference was strong enough that because it was there, that they might have gotten it there. And I think here again, we have three different downloads. We have the fact that the way Freenet is organized, one has to take the affirmative step of going somewhere where that kind of information can be found or you'll never find it. And I think that... One other just technological question.  When you... They say there's no evidence from the affidavit that it was downloaded, and I'm just trying to figure out what that means. If I have a key and I go use the key, what's going to happen? So the question about downloading is raised in a particular way. There's no information in the affidavit. The affidavit was unable to know whether all the pieces have been downloaded, but Freenet breaks it up into many hundreds of pieces. And so activating the link, whether by putting it in the browser or if it's possible to click that link, clicking on the link starts the download immediately. So something had to be downloaded. Something was downloaded. Yeah. I mean, unless it failed at the first step. But the logic of this is... What's the first step? Well, meaning that the way, again, the technology is part of the overlay that's important to  Freenet distributes the pieces among many different computers, and there's duplication. So a given piece of a file may be in multiple places, but not everyone has every piece. But the key really just means your ability to request the file. It's a request that begins the process of accumulating the pieces. And so it's in theory, the piece that you got would not itself be child pornography. It may not, but I think it would be evidence of attempt, at least, if you have a piece of a file that is known to be child pornography. If there was some evidence that the level of the problem caused it to be child pornography. Until you get all the pieces, you can't actually download the file. You don't know what's in it.  And that's why... It's not like you see part of it. I just want to clarify. It's not like you see part of it. You just see nothing. Right. And that's why the government's... The argument for probable cause doesn't rely on having, as my colleague pointed out, having seen one file before you download the next one. But for staleness purposes, if we agreed with you on probable cause in the sense that the multiple requests gives a fair interest that it was intentional that you were trying to get child pornography, given that's what's on those... That's what that key leads you to. If we agreed with that, there's still the staleness issue. And is the technological point you were just making that some material from those sites would necessarily be on the computer just from the request? Yes. Supportive of the... Helpful to the staleness argument?  Or is there... I'm happy to talk about the staleness. Just let me finish. Yeah. Or is there some way the technology works that it's possible I could make a request and literally nothing would be transferred to my computer? It seems highly unlikely, given that, again, distributed among many computers and many pieces that has a relatively broad reach. One understands from the affidavit, each requesting computer goes for a particular piece to a  If that peer doesn't have it, it goes to their peers. It goes on for 17 or 18 times. And anything comes back. I mean, it's, I guess, conceivably possible that absolutely every piece would fail through that all those many searches. But much more likely than not, and there's no indication that this routinely happens, you would have much of the file, maybe all of it. There's also no indication that it routinely fails in its entirety. So there's at least, I think, even at the level of probable cause likelihood, the whole thing would be there. But again, there's really no evidence to suggest you would have nothing. Plus, I think this is... It seems to me that you're doing a kind of double counting here in this sense. You are, to deal with the staleness issue, you're relying on the power of the inference that these three rapid attempts to acquire these images reflects a degree of intentionality that puts this individual in the category of a collector of child pornography. And hence, as a collector of child pornography, these images will be kept over time. And so they will be found on his computer. I mean, it seems to me indisputable that there is nothing in the affidavit, independently of this information about the three rapid attempts, you don't know anything about who this individual might be at this location that would put him in that category. So in dealing with the staleness issue, you must be relying on the power of that initial inference that you're asking us to draw. Isn't that what you're doing? I think not, Your Honor, and I want to explain why. The affidavit says a lot beyond about the storage and retention of computer information that's not related to child pornography specifically. Yes, there's an argument made about collectors. But there's also an argument made about, actually, paragraphs devoted to the fact that information is stored on a computer, even if one attempts to delete it, over a long period of time. Cache files, information about, for example, what website or free site he went to to download this information. That would be retained by his computer, and that's because the general inquiry of staleness is looking at the type of the information and its potential durability, and then also the nature of the information. The first and the second, I think, very clearly are satisfied here because the affidavit says, and I don't think there's been any dispute, that a computer stores the kind of information we're talking about. The request, pieces of the file, information about other related requests, information about what site he visited from which he got those links. All that is the kind of information the affidavit says is stored on a computer as a matter of course and will remain on a computer even if one attempts to delete it. So that provides a sense of longevity, of the sense that information would be there. Obviously, there's a possibility he sold his computer and has a different one now, but there's at least within, separate from the question of collection, there's an inference that would be drawn that information related to it, of one of those other kinds related to the searches, would remain on the computer over a period of time, and even despite attempts to delete it. So the staleness issue is addressed by the underlying technology and not necessarily the characteristics of the individual? It's both, because I think the other thing I would point out is that it's not really a binary inquiry of collector or not collector. Raimonda, the case on which they rely, specifically notes there's cases where a number of affirmative steps are taken where a single download will establish a person to fall within the collector category or hoarder category so as to give rise to this inference of longevity. So there hasn't been a suggestion that one has to actually demonstrate the person has collected a large number of images to call them a collector. There can be other inferences drawn. Again, Raimonda points to a case where there was one download. But again, when I say it's not a binary inquiry, it may, to some extent, be weaker if the inference of intent is less, but the nature of the information is still a relevant consideration in the nature of the basic staleness inquiry, and the nature of the information is something that's often kept. With respect to the consumer piece of the affidavit that consumers collect, I read your argument. I don't know that there's anything wrong with this, but the reason you say he would qualify as a consumer is because of the inference that can be drawn from the three attempts. No, that's correct. I'm not walking away from that inference. I don't think it's unfair double counting, because I think that's what occurs in all of the context, and that's why I note that Raimonda cites a case where there's only one download. But the point is that it's the nature of the information, whether it's a durable type of information or whether it's likely to have been kept, and that inference may be weaker if the inference of intent is weaker, but it's still a relevant inference, and I don't think it's unfair double counting to say that because we can draw an inference of intentional acquisition, he falls within the category that's been considered to be collectors in that sense. And again, I don't think collectors have been defined as, like, must show that at least five images have been collected. It's to suggest is there information, and I think Raimonda says this, Basak cites it, you have to show that they're interested in obtaining this material. That's all you're trying to do is distinguish the interested from the inadvertent, and once you show an interest, you fall into the category that can be kind of take part in this inference of collection. And again, Raimonda itself says that, and I think the three certainly brings you there, but I also think that the computer information also supports the same result. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce herself on the record? She has a two-minute rebuttal. Before you begin, I just want to make sure you don't sit down without addressing at least the good faith. Okay. Argument. I do want to address the government mentioning that the status as a collector is not tied to a specific number of downloads, which is accurate. One download may be sufficient, but in this case, the affidavit does not state that there were any downloads. As Judge Reichman pointed out, there was the start of compiling of pieces of a file, and that was never completed. In fact, it is entirely possible that the request in this case, the three requests in this case, was aborted. In terms of good faith, for the same reasons that this affidavit lacks probable cause, the same exact reasons why law enforcement could not have relied on this affidavit in good faith. There are so many deficiencies in this affidavit that it was not objectively reasonable to rely on it. I mentioned earlier about the missing pieces in the affidavit. The officer knew they did not have information about this particular user. The officer knew that they were just including boilerplate information about collectors without tying the fact that this user was a collector. The officer did not include information about how the key was located, because they did not know. They did not know if any information accompanied the key. They could not confirm that any files were actually downloaded. And when you're facing an affidavit, and the officer is the one who is submitting this affidavit to the magistrate, and it's that deficient, then the officer cannot come back and say, well, I was relying on the affidavit in good faith when they're the ones that submitted an affidavit that was wholly deficient. Any further questions about that? Thank you. Thank you. Thank you, counsel. That concludes argument in this case.